686 S.E.2d 735

Ronald Lee HARRISON and Brenda G. Harrison, Plaintiffs Below, Respondents

v.

SKYLINE CORPORATION, Defendant Below, Petitioner.

No. 34706.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2009.

Decided Nov. 13, 2009.

**508**

Thomas N. Whittier, Hedges, Jones, Whittier & Hedges, Spencer, WV, Frank J. Venezia, Jamie F. Little, Shaffer & Shaffer, Madison, WV, for Respondents.

John R. Teare, Jr., Bowles, Rice, McDavid, Graff & Lowe, Charleston, WV, for Petitioner.

1. 42 U.S.C. §§ 5401–5426.

2. In addition to the briefs of the parties, this Court also has been afforded the insight of the West Virginia Housing Institute on this subject by way of its amicus brief.

3. The performance of counsel during oral argument of this case is especially noteworthy. We extend recognition to John Teare, counsel for the petitioners, and Jamie Little, counsel for the respondents, both for being fully prepared to dis-

Johnnie Brown, Pullin, Fowler & Flanagan, Charleston, WV, for Amicus, WV Housing Institute.

McHUGH, Justice:

Our review in this case involves issues raised in the Order of Certification of the Jackson County Circuit Court entered on August 11, 2008, regarding the extent to which formaldehyde-based negligence claims are preempted under the provisions of the federal Manufactured Home Construction and Safety Standards Act[1] (hereinafter "MHA"). After examining the briefs submitted,[2] hearing oral arguments[3] and reviewing the relevant law, we have reformulated the questions with answers as explained in detail below.

## I. Factual and Procedural Background

In September 1995, Ronald Lee and Brenda G. Harrison (hereinafter "Harrisons"), purchased a manufactured home constructed by Skyline Corporation (hereinafter "Skyline").[4] In constructing the home, Skyline used certain building materials supplied by Georgia–Pacific Corporation (hereinafter "Georgia–Pacific"). These materials included formaldehyde treated floor decking, which the parties appear to agree complied with the federal regulatory standards for formaldehyde emission levels of plywood and particleboard materials used in manufactured homes. *See* 24 C.F.R. §§ 3280.308 and 3280.309.

After the manufactured home was delivered and installed, the Harrisons modified the structure by adding hardwood flooring and a walk-in closet, and building on three decks and an extension to the home. Skyline did not participate in any of these subsequent construction projects, nor did Skyline supply any materials associated with the additional work.

cuss the issues and for being candid in responding to questions raised by the Court.

4. Skyline and Georgia–Pacific jointly petitioned this Court to consider the questions certified by the lower court. This Court dismissed Georgia–Pacific from the case upon joint motion of Skyline, Georgia–Pacific and the Harrisons, leaving Skyline as the sole petitioner in this matter in which the Harrisons are respondents.

The Harrisons maintain that they began experiencing various health problems after living in the home for six years. In attempting to identify the cause or causes of the problems, the Harrisons had their home inspected and among the things they learned was that debris from the formaldehyde-treated floor decking had been left in the duct work of the manufactured home's heating system. On April 11, 2005, the Harrisons filed suit against Skyline, Georgia–Pacific and others.[5] With regard to formaldehyde, the complaint specifically alleged:

> During the course of manufacture of the Mobile Home,[6] Skyline caused numerous pieces of Georgia Pacific manufactured home decking containing formaldehyde to be cut into pieces. The formaldehyde containing sawdust and residue of this process was negligently swept or otherwise placed by Skyline into the forced air heating ducts....

The complaint further alleges that "the plaintiffs [were exposed] to toxic levels of formaldehyde" released into the air of the home when the formaldehyde treated waste materials in the duct work were subjected to forced air heat.

Skyline filed a motion to dismiss based in part on the assertion that federal law preempted the Harrison's formaldehyde based negligence claim. Following the conclusion of discovery, Skyline again raised the issue in a motion for summary judgment. The trial court entered an order on October 10, 2007, dismissing some of the Harrisons' claims against Skyline. However, the order relates a different outcome as to the claim concerning formaldehyde treated panels as shown by the following excerpt from the Conclusions of Law:

> 55. Regarding the argument that Plaintiffs' claim for personal injury from excess formaldehyde gas in the manufactured home is preempted by federal law, the court is persuaded that the law of this state is that such claims are not preempted by the National Manufactured Housing Construction and Safety Standards Act, 42 U.S.C.A. Sections 5401–5426, nor by regulations promulgated thereunder.[7]

After further concluding that genuine issues of material fact remained unresolved with regard to the formaldehyde based claim, the lower court denied Skyline's motion for summary judgment.

Skyline next filed a motion requesting the lower court to either reconsider Skyline's preemption argument or to seek review of the preemption question by this Court. By order dated July 22, 2008, the trial court affirmed its prior denial of summary judgment of the formaldehyde based claims and granted the request to certify questions of law regarding the federal preemption defense raised by Skyline and Georgia–Pacific to the negligence claims. On August 11, 2008, the trial court entered an order certifying the following three questions with answers to this Court:

1. Does the preemption provision found at 42 U.S.C. § 5403(d) preempt and bar plaintiff's common law negligence claim based upon formaldehyde exposure when the Plaintiffs do not claim, and cannot establish, that the Defendants failed to comply with the formaldehyde standards established in 24 C.F.R. §§ 3280.308 and 3280.309?

**ANSWER: NO.**

2. May the plaintiffs present evidence of ambient air testing for the presence of formaldehyde in support of their common law negligence claim when HUD specifically considered and rejected the ambient air standard that plaintiffs want to present to a court and jury as the standard of care.

**ANSWER: YES.**

---

**5.** Skyline is the sole remaining defendant in this suit.

**6.** *See* 42 U.S.C. § 5402, "Codification" notation (explaining that general term "manufactured home" includes mobile homes).

**7.** The U.S. Department of Housing and Urban Development (hereinafter "HUD") is charged with promulgation of regulations to implement the provisions of the MHA. *See generally Manufactured Home Construction and Safety Standards,* 24 C.F.R. § 3280, and *Manufactured Home Procedural and Enforcement Regulations,* 24 C.F.R. § 3282.

3. Does the "savings clause" of 42 U.S.C. § 5409(c) preclude the Court from granting the Defendants' motions for summary judgment when despite the legislative history which established that it was is [sic] HUD's intention that federal standards preempt State and local formaldehyde standards in accordance with 42 U.S.C. § 5403(d)?

**ANSWER: YES.**

By order entered January 22, 2009, this Court agreed to review the preemption issues raised.

## II.  Standard of Review

The established "appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syl. Pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996). Likewise, "Preemption is a question of law reviewed *de novo.*" Syl. Pt. 1, *Morgan v. Ford Motor Co.,* 224 W.Va. 62, 680 S.E.2d 77 (2009).

## III.  Discussion

Although the lower court certified three questions for our consideration, we find it more suitable to consolidate the issues into two questions because the circuit court's third question is an essential part of the discussion of the meaning of the supremacy clause of 42 U.S.C. § 5403(d) raised in the first certified question. This consolidation results in the following reformulated [8] questions:

1.  Did Congress intend to preempt common law negligence claims based on formaldehyde exposure in manufactured homes which seek to establish a standard of performance not covered by the federal Manufactured Home Construction and Safety Standards Act, 42 U.S.C. §§ 5401–5426, or regulations promulgated thereunder and which pose no challenge to the federally established formaldehyde emission standards, 24 C.F.R. §§ 3280.308 and 3280.309?

2.  Is ambient air testing for the presence of formaldehyde in wood products used in the construction of a manufactured home built in accordance with the provisions of the federal Manufactured Home Construction and Safety Standards Act, 42 U.S.C. §§ 5401–5426 admissible as evidence in a common law negligence action seeking to establish a standard of performance not covered by the Act or associated regulations when the regulatory agency responsible for carrying out the federal Act rejected the use of ambient air standards as the measure of acceptable formaldehyde emission levels for certain wood products installed in such homes?

We most recently discussed the analysis applied to preemption questions in *Morgan v. Ford Motor Company,* 224 W.Va. 62, 680 S.E.2d 77 (2009). As related in *Morgan,* the preemption doctrine has its roots in the supremacy clause of the United States Constitution and is based on the premise that federal law can supplant inconsistent state law. *Id.* at Syl. Pt. 2. However, preemption is not automatic, especially in areas such as health and safety which have traditionally been regulated by the states. *Id.* at Syl. Pt. 3. Thus for preemption to occur, there has to be convincing evidence that Congress intended a federal law to supersede a state law. Such Congressional intent may be express or implied in the language of the statute under consideration. *Id.* at Syl. Pts. 4 and 5. Preemption may be implied when the pervasive regulatory scheme of a federal Act leaves no room for state regulation (field preemption), or where compliance with both federal and state regulations is physically impossible or state regulation otherwise is an obstacle to accomplishing congressional objectives (conflict preemption). *Id.* at Syl. Pt. 7. In brief, the first step in a preemption analysis is to determine if the federal Act in question expressly bars state action. If state involvement is not expressly barred by the terms of the federal statute, the second step is to determine whether field preemption or conflict preemption may be implied from the construction of the statute or federal standards promulgated thereunder.

---

**8.**  *See* Syl. Pt. 3, *Kincaid v. Mangum,* 189 W.Va. 404, 432 S.E.2d 74 (1993) (acknowledging this Court's authority to reformulate questions certified to it).

## A.  Express Preemption

■   The MHA actually has two significant provisions weighing in on the issue of preemption.   It is apparent from a common sense reading of these two clauses of the MHA that state common law claims are not expressly preempted under the Act. The first provision, appearing in 42 U.S.C. § 5403(d), is designated "Supremacy of Federal standards" (hereinafter referred to as the "supremacy clause") and reads:

> Whenever a Federal manufactured home construction and safety standard established under this chapter is in effect, *no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any manufactured home covered, any standard regarding the construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard.   Federal preemption under this subsection shall be broadly and liberally construed to ensure that disparate State or local requirements or standards do not affect the uniformity and comprehensiveness of the standards promulgated under this section nor the Federal superintendence of the manufactured housing industry as established by this chapter.*  Subject to section 5404 of this title, there is reserved to each State the right to establish standards for the stabilizing and support systems of manufactured homes sited within that State, and for the foundations on which manufactured homes sited within that State are installed, and the right to enforce compliance with such standards, except that such standards shall be consistent with the purposes of this chapter and shall be consistent with the design of the manufacturer.

Emphasis added.

The second preemption related provision of the MHA is found in 42 U.S.C. § 5409(c) (hereinafter referred to as the "savings clause") and states: "Compliance with any Federal manufactured home construction or safety standard issued under this chapter *does not exempt any person from any liability under common law.*"  Emphasis added.

When the United States Supreme Court was faced with similar conflicting clauses in the National Traffic and Motor Vehicle Safety Act [9] in *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), it concluded that both clauses needed to be given effect in deference to congressional intent.  Following this course, the Supreme Court in *Geier* found that due to the presence of a saving clause that the language of the supremacy clause before it had to be narrowly read so as to preempt only state statutes and regulations which were not identical to a federal standard stated in the motor vehicle safety statute or rules promulgated thereunder.

We see no cause to apply different reasoning in our consideration of the supremacy and saving clauses of the MHA. The express terms of the supremacy clause only preempt states and their political subdivisions from having manufactured home standards which are not identical to a federal standard applicable to the same aspect of performance. The issue raised in the pending suit does not involve such conflicting state standards but rather asserts a claim based upon common law negligence.  The savings clause of the MHA makes it clear that the congressional intent was not to explicitly preclude common law suits.   Courts in other jurisdictions, while considering formaldehyde based claims involving manufactured homes, have likewise

---

9.  The supremacy clause of the Traffic and Motor Vehicle Safety Act considered in *Geier* stated:
Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment[,] any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.
*Geier* at 867, 120 S.Ct. 1913 (citation omitted). The saving clause of the motor vehicle safety Act stated that " '[c]ompliance with' a federal safety standard 'does not exempt any person from any liability under common law.' " *Id.* at 868, 120 S.Ct. 1913 (citation omitted).

found that common law suits are not expressly preempted by the MHA. *See, e.g. In re: FEMA Trailer Formaldehyde Products Liability Litigation,* 620 F.Supp.2d 755 (E.D.La. 2009); *Shorter v. Champion Home Builders Co.,* 776 F.Supp. 333 (N.D. Ohio 1991); *Richard v. Fleetwood Enterprises, Inc.,* 4 F.Supp.2d 650 (E.D.Tex.1998); *Mizner v. North River Homes, Inc.,* 913 S.W.2d 23 (Mo.App. E.D.1995).

Skyline argues that even if the MHA does not expressly preempt state jurisdiction of all manufactured housing construction and safety issues, it was the intent of Congress that state jurisdiction be limited to matters for which there is no HUD standard.[10] Indeed, the presence of an express preemption provision does not, by itself, foreclose an *implied* preemption analysis. The presence of a saving clause does not eliminate the possibility that some common law actions may still be preempted under a federal Act when implied preemption principles are applied. *Geier,* 529 U.S. at 869, 120 S.Ct. 1913. We proceed to consider whether the Harrisons' claim is impliedly preempted either on the basis of field or conflict preemption.

### B. Implied Preemption

#### 1. Field Preemption

Where states have traditionally regulated conduct in a given area, field preemption may only be founded on clear and manifest congressional intent to alter that tradition and occupy the field. *English v. General Electric Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). The Harrisons pending claim against Skyline is for the negligent manufacture of their home. The alleged negligent act committed by Skyline is leaving waste materials from formaldehyde treated particleboard or plywood panels in the heating ducts while installing the treated panels as floor decking in the

home. The Harrisons' maintain that the waste materials from particleboard or plywood generated an unsafe level of formaldehyde in the manufactured home when heated. Negligent conduct historically has been regulated by state common law. *Richard v. Fleetwood Enterprises, Inc.,* 4 F.Supp.2d at 657; *see also In re: FEMA Trailer Formaldehyde Products Liability Litigation.* As previously established, manifestation of congressional intent in the MHA regarding conflicts with state law is contained in the supremacy and saving clauses. The MHA supremacy clause provides that the standards in the Act are supreme over any standard that state law may impose (42 U.S.C. § 5403(d)), and the saving clause provides that common law liability can attach in spite of compliance with federal standards (42 U.S.C. § 5409(c)). Accordingly, we find no clear manifestation of congressional intent to occupy the field of regulation of formaldehyde usage in manufactured housing so as to preempt all state common law causes of action involving formaldehyde.

#### 2. Conflict Preemption

As noted previously, conflict preemption may exist under two circumstances: (1) when federal and state regulations conflict and compliance with both is physically impossible, or (2) when state involvement would be an obstacle to accomplishing congressional objectives.

No state regulation is at play in the pending case, and no one has argued that it would be impossible to comply with both a common law standard governing disposal of formaldehyde treated waste products and the federal formaldehyde emissions standard. Instead, Skyline's argument advocating implied preemption focuses on the suit being an obstacle to achieving the purposes of the MHA as set forth in the Act.[11] Skyline as-

---

**10.** *See* 42 U.S.C. § 5422(a), quoted and discussed *infra* at B.2., Conflict Preemption.

**11.** Congress enumerated the purposes of the MHA in 42 U.S.C. § 5401(b) as follows:

(1) to protect the quality, durability, safety, and affordability of manufactured homes;

(2) to facilitate the availability of affordable manufactured homes and to increase home[-]ownership for all Americans;

(3) to provide for the establishment of practical, uniform, and, to the extent possible, performance-based Federal construction standards for manufactured homes;

serts in its brief that the legislative history of the MHA indicates the intent of Congress to limit state involvement as shown by the following excerpt from a U.S. Senate Report: " 'States would be permitted to retain jurisdiction under State law over a mobile home safety issue where there is no HUD standard.' [S.Rep.No. 93–693, 93rd Cong., 2d Sess. (1974) reprinted in 1974 U.S.C.C.A.N. 4273,] 4279." Skyline also notes that 24 C.F.R. § 3282.11(d) promulgated pursuant to the MHA by HUD explicitly reflects the congressional desire for preemption of any state action which conflicts with federal oversight of the provisions of the MHA:

> No State or locality may establish or enforce any rule or regulation or take any action that stands as an obstacle to the accomplishments and execution of the full purposes and objectives of Congress. The test of whether a State rule or action is valid or must give way is whether the State rule can be enforced or the action taken without impairing the Federal superintendence of the manufactured home industry as established by the Act.

We are not convinced that either or both of these pieces of information lead to the conclusion that Congress intended to remove all matters related to formaldehyde emissions in manufactured homes from the purview of the States. The Senate Report appears to do no more than make clear that, in addition to being permitted under the MHA supremacy clause to set manufactured home standards identical to federal standards, States are free to establish manufactured home standards to address issues not covered by HUD regulation. It is merely a restatement of the express provision of the MHA that "Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under

State law over any manufactured home construction or safety issue with respect to which no Federal manufactured home construction and safety standard has been established pursuant to the provisions of section 5403 of this title." 42 U.S.C. § 5422(a).

As to the significance of the cited preemption language in the HUD regulations to our deliberations in the present case, this Court has recognized that a federal agency regulation with the force of law can preempt conflicting state requirements. Syl. Pt. 8, *Morgan*, 224 W.Va. at 65, 680 S.E.2d at 80. In such cases, however, courts do not determine whether preemption exists based upon the bald statement of preemption in a federal regulation, but rather by examining the substance of the relevant state and federal law to determine if a conflict does exists. *Id.* The specific question before us then is whether allowing a suit of common law negligence to proceed in State court would be an obstacle to accomplishing congressional objectives [12] of producing manufactured homes in an affordable, uniform and safe manner.

The amicus curiae asserts that the HUD formaldehyde emissions standard applicable to the manufactured home industry promulgated pursuant to the provisions of the MHA squarely conflicts with the ambient air standards the Harrisons want to use to establish their negligence claim. The HUD standard is a product standard rather than an ambient air standard. The product standard requires that the particleboard or plywood panels manufactured for installation in manufactured homes must meet certain emission standards before the panels may in turn be used in the construction of manufactured homes. *See* 24 C.F.R. § 3280.308. It is further maintained in the amicus brief that

(4) to encourage innovative and cost-effective construction techniques for manufactured homes;
(5) to protect residents of manufactured homes with respect to personal injuries and the amount of insurance costs and property damages in manufactured housing, consistent with the other purposes of this section;
(6) to establish a balanced consensus process for the development, revision, and interpretation of Federal construction and safety standards for manufactured homes and related

regulations for the enforcement of such standards;
(7) to ensure uniform and effective enforcement of Federal construction and safety standards for manufactured homes; and
(8) to ensure that the public interest in, and need for, affordable manufactured housing is duly considered in all determinations relating to the Federal standards and their enforcement.

12. *Supra* n. 8.

HUD had considered an ambient air standard in formulating the emission standard. An ambient air test would require testing of the home after the panels were installed and the home is completely assembled. As explained in the amicus brief, HUD clearly rejected an ambient air standard as the industry standard. HUD represented that the product standard was adopted because the product standard is an effective measure of formaldehyde emission levels, involves a readily available test method and has the potential to prevent formaldehyde problems before homes are sold. The amicus curiae urges us to find that the Harrisons formaldehyde based claim is preempted under the provisions of the supremacy clause and the purposes of the MHA because the Harrisons want to use an ambient air standard to argue their formaldehyde based negligence claim when ambient air standards are not identical to the HUD product standard.

The Harrisons assert that their suit poses no challenge to the established HUD standard. Instead, they filed the formaldehyde based negligence claim seeking to establish construction standards for manufactured homes for which no HUD regulations exist. The Harrisons maintain that Skyline was negligent by leaving waste materials from formaldehyde treated panels in the heating ducts of their manufactured home, which generated an unsafe formaldehyde level in the air. Proper disposal of formaldehyde waste materials is an activity for which HUD has no standard. The Harrisons say they wish to introduce ambient air samples in their case not to prove a flaw in the way the treated panels themselves were manufactured, but to establish a standard for proper disposal of formaldehyde treated waste materials. Consequently their suit does not conflict with the supremacy clause or any of the stated objectives or purposes of the MHA.

The Harrisons claim that their suit actually furthers the purpose of the act by promoting safety in the manufacture of the homes.

There are relatively few cases which address the issue of whether common law claims for injuries caused by formaldehyde emissions in manufactured homes are impliedly preempted under the MHA. Some of these cases involve issues not present in the case before us.[13] The lower court's October 10, 2007, order in which Skyline's motion for summary judgment of the Harrisons' formaldehyde based negligence claim on preemption grounds was denied, cited to the cases of *Shorter v. Champion Home Builders Company and Mizner v. North River Homes, Inc.* for support of its conclusion without providing any reasons for reliance on these decisions. Skyline suggests instead that the decisions in *In re: FEMA Trailer Formaldehyde Products Liability Litigation* and *Macmillan v. Redman Homes, Inc.*, 818 S.W.2d 87 (Tex.App.–San Antonio Dist.1991), provide the more reasoned analysis. Having carefully reviewed these cases, we find that none of them concern claims comparable to the Harrisons' of seeking to establish a standard of performance in an area which HUD has not promulgated regulatory standards pursuant to the MHA. Instead, the focus of these cases are tort claims which pose a direct challenge to the formaldehyde emission standard established by HUD. We do, however, find that the discussion in *Macmillan* sheds some light on our current inquiry.

*Macmillan* involved wrongful death and personal injury suits against companies that manufactured and repaired a manufactured home. The plaintiffs did not allege any failure to conform with the federally prescribed product standard, yet they did contend that the ambient air inside the home contained unsafe levels of formaldehyde. The action was viewed as a direct challenge to the HUD

---

**13.** Some of these cases involve preemption under the MHA of state claims seeking to enforce federal standards, *see e.g. Richard v. Fleetwood Enterprises*, 4 F.Supp.2d 650 (E.D.Tex.1998), *Woolridge v. Redman Homes, Inc.*, 792 F.Supp. 1469 (N.D.Tex.1991), *Hall v. Fairmont Homes*, 105 Ohio App.3d 424, 664 N.E.2d 546 (1995); other cases address the preemptive effect of the MHA on state and local regulations rather than state common law actions, *see e.g. Scurlock v. City of*

*Lynn Haven, Fla.*, 858 F.2d 1521 (11th Cir.1988), *Liberty Homes, Inc. v. Dept. of Indus., Labor & Human Relations*, 125 Wis.2d 492, 374 N.W.2d 142 (Wis.App.1985). For a general overview of cases dealing with the issue of preemption under the MHA, *see William G. Phelps, Pre-emptive Effect of Construction and Safety Standards of National Manufactured Housing Construction and Safety Standards Act of 1974 (42 U.S.C.A. §§ 5401–5426)*, 172 A.L.R. Fed. 349 (2001).

product standard for formaldehyde emissions in that the plaintiffs were asserting the manufacturers of the home were negligent by failing to meet an ambient air standard which HUD had rejected as the federal formaldehyde emission standard. Holding that the MHA preempts state court jurisdiction to litigate safety issues governed by an existing MHA formaldehyde standard, the court in *Macmillan* also recognized by referencing the provisions of 42 U.S.C. § 5422 that Congress intended to allow "state courts [to] assert jurisdiction over manufactured housing safety issues when there is no federal standard on the subject." 818 S.W.2d at 94 (emphasis in original omitted).

The Harrisons common law negligence claim in this case is an attempt to set a performance standard in an area for which HUD has no standard: the proper disposal of formaldehyde treated materials during the manufactured home construction process. We fail to see how such a standard would thwart attainment of the overall objectives of the MHA since it would promote the purpose of "protect[ing] the quality, durability, safety and affordability of manufactured homes." 42 U.S.C. § 5401(b)(1). Accordingly we conclude that common law negligence claims based on formaldehyde exposure in manufactured homes which seek to establish a standard of performance not covered by the federal Manufactured Home Construction and Safety Standards Act, 42 U.S.C. §§ 5401–5426, or regulations promulgated thereunder and which pose no challenge to the federally established formaldehyde emission standards, 24 C.F.R. §§ 3280.308 and 3280.309, are not subject to preemption.

Given the nature of the standard the Harrisons are seeking to establish through pursuit of their claim, we see no reason why results of ambient air tests would be generally barred as evidence in the case. We are not persuaded that HUD's rejection of an ambient air standard necessarily precludes allowing the use of ambient air levels as evidence in a case where no direct challenge to HUD's formaldehyde emissions standard is made. This Court was apprised during oral argument that after panels meeting HUD's product standard are installed in a manufactured home the measure of formaldehyde emissions is made by ambient air tests. Proof of conformance with the product standard thus would provide no meaningful information in a suit trying to establish that a building design or construction method is faulty when evidence of these flaws are not manifested until after the panels meeting the product standard are installed. Consequently, we hold that ambient air testing for the presence of formaldehyde in wood products used in the construction of a manufactured home built in accordance with the provisions of the federal Manufactured Home Construction and Safety Standards Act, 42 U.S.C. §§ 5401–5426, is admissible as evidence in a common law negligence action seeking to establish a standard of performance not covered by the Act or associated regulations as long as the tests are not used to challenge the formaldehyde emission levels established under the Act. Naturally, the decision regarding admissibility of evidence at trial is left to the sound discretion of the court. As we have clearly indicated, " 'The West Virginia Rules of Evidence ... allocate significant discretion to the trial court in making evidentiary ... rulings. Thus, rulings on the admission of evidence [in a given case] ... are committed to the discretion of the trial court....' Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995)." Syl. Pt. 9, in part, *Tudor v. Charleston Area Medical Center, Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997).

### IV. Conclusion

For the reasons stated herein, we answer the reformulated certified questions as follows:

1.  Did Congress intend to preempt common law negligence claims based on formaldehyde exposure in manufactured homes which seek to establish a standard of performance not covered by the federal Manufactured Home Construction and Safety Standards Act, 42 U.S.C. §§ 5401–5426, or regulations promulgated thereunder and which pose no challenge to the federally established formaldehyde emission standards, 24 C.F.R. §§ 3280.308 and 3280.309?

Answer: No.

2. Is ambient air testing for the presence of formaldehyde in wood products used in the construction of a manufactured home built in accordance with the provisions of the federal Manufactured Home Construction and Safety Standards Act, 42 U.S.C. §§ 5401–5426 admissible as evidence in a common law negligence action seeking to establish a standard of performance not covered by the Act or associated regulations when the regulatory agency responsible for carrying out the federal Act rejected the use of ambient air standards as the measure of acceptable formaldehyde emission levels for certain wood products installed in such homes?

Answer: Yes.

Certified questions answered.