**SPECIAL MASTER COMMISSIONERS v. McCAHAN, Respondent.
McMILLEN et, SPECIAL MASTER COMMISSIONERS, v. McCAHAN,
Respondent.**

Common Pleas Court, Stark County.

No. 98193.   Decided March 1960.

**2**

John F. Cholley, for Master Commissioners.
I. Bruce Hart, LeRoy J. Contie, for respondent.

## OPINION
By ROSSETTI, J.

Special Master Commissioners were appointed by the Common Pleas Court, to investigate the unauthorized practice of law in Stark County. This action seeks to enjoin and restrain the respondent, Jack R. McCahan, from engaging in the practice of law within the State of Ohio.

The "Second Amended Application For Injunction" charges that the respondent does not have and never has had a license to practice law in the State of Ohio; that said respondent has been and is now engaged in the practice of law in the State of Ohio and does practice law in the following particulars:

"1. In holding himself out as being legally qualified and competent to render advice and counsel and in rendering advice and counsel to individuals, firms and corporations, concerning the legal effect of provisions of law passed by the legislature of the State of Ohio, and rules and regulations adopted and promulgated by the Industrial Commission of Ohio, and by the Administrator of the Bureau of Workmen's Compensation of the State of Ohio.

"2. In preparing and filing the various forms issued by, or under the supervision of the Industrial Commission of Ohio, or the Administrator of the Bureau of Workmen's Compensation of the State of Ohio,

including the selection of the proper forms, involving the use and application of legal knowledge, in the filing or processing of claims, or otherwise practicing before said the Industrial Commission of Ohio, or the Administrator of the Bureau of Workmen's Compensation of the State of Ohio, and in the giving of advice to his clients as to the legal effect of the use of such forms.

"3. In filing or causing to be filed, in certain instances, appeals from the decisions of the Industrial Commission of Ohio, or the Administrator of the Bureau of Workmen's Compensation of the State of Ohio, to the Board of Review.

"4. In furnishing, suggesting or acting as intermediary in the employment of legal counsel to prosecute appeals from decisions of the Industrial Commission of Ohio, or the Administrator of the Bureau of Workmen's Compensation of the State of Ohio, to the Board of Review or from the decisions of the Board of Review to the Court of Common Pleas.

"5. In counseling, advising and otherwise performing services for individuals, firms and corporations in connection with their rights under the provisions of the Laws of the State of Ohio, relating to the Industrial Commission and the Administrator of the Bureau of Workmen's Compensation, including the rules and regulations promulgated by the Industrial Commission and the Administrator of the Bureau of Workmen's Compensation of the State of Ohio.

"6. By acting as an intermediary between customers and lawyers selected by said Jack R. McCahan to perform legal services in connection with securing and obtaining compensation and medical expenses under the provisions of the Workmen's Compensation Laws of Ohio and by forwarding such legal work directly to such lawyers.

"7. By dividing the fees paid by his customers with lawyers selected by said Jack R. McCahan to perform legal services and to whom said defendant forwarded the work directly, and by accepting fees from lawyers selected by said Jack R. McCahan to perform legal services for his customers and to whom said defendant forwarded the work directly and which fees accepted by said defendant were a portion of the fees paid by his customers to such lawyers.

"8. By advising and counselling divers parties and claimants for Workmen's Compensation that such applications that he selected, prepared and filed with the Bureau of Workmen's Compensation of Ohio, or the Industrial Commission of Ohio, were designed to fit their legal needs and requirements to obtain the type and amount of compensation and medical expenses to which such persons were entitled under the provisions of the Workmen's Compensation Laws of Ohio, and the rules and regulations promulgated by the Industrial Commission of Ohio, and the Administrator of the Bureau of Workmen's Compensation of Ohio.

"9. In selecting, preparing and drafting various forms of applications on behalf of his customers with the intent and for the purpose of obtaining compensation and medical expenses for such customers under the provisions of the Workmen's Compensation Laws of Ohio, and under the rules and regulations promulgated by the Industrial Commis-

sion of Ohio and the Administrator of the Bureau of Workmen's Compensation of Ohio and filing such applications with the Bureau of Workmen's Compensation of Ohio, and the Industrial Commission of Ohio.

"10. In preparing affidavits of facts for evidence to support claims of his customers for compensation and medical expenses under the provisions of the Workmen's Compensation Laws of Ohio and filing such affidavits with the Bureau of Workmen's Compensation of Ohio, and the Industrial Commission of Ohio, and by collecting and filing medical reports as evidence, and collecting and filing evidence of weekly earnings of his customers with the intent and for the purpose of supporting his customer's claims for compensation and medical expenses under the provisions of the Workmen's Compensation Laws of Ohio.

"11. By rendering opinions to his customers concerning the probability of such customers right to receive compensation and medical expenses under the provisions of the Workmen's Compensation Laws of Ohio from the facts given him by such customers.

"12. By counselling and advising customers concerning the preparation and filing of applications for compensation and medical expenses under the provisions of the Workmen's Compensation Laws of Ohio and the rules and regulations of the Industrial Commission of Ohio, and the Bureau of Workmen's Compensation of Ohio.

"13. By presenting evidence and arguments before the Administrator and a Deputy Administrator of the Bureau of Workmen's Compensation of Ohio, and a Regional Board of Review of said Bureau as the Representative of his customers who are claimants for compensation and medical expenses under the provisions of the Workmen's Compensation Laws of Ohio.

"14. By preparing and filing notices of appeal on behalf of his customers from decisions of the Administrator and a Deputy Administrator of the Bureau of Workmen's Compensation of Ohio, to a Regional Board of Review of said Bureau and by preparing and filing notices of appeal from decisions of a Regional Board of Review of said Bureau to the Industrial Commission of Ohio."

The Master Commissioners allege that they, and the other members of the Stark County Bar Association, have no other adequate remedy at law, and if the respondent, Jack R. McCahan, is permitted to continue said practice of law the public and members of the Stark County Bar will be irreparably damaged.

The prayer of the application is that the respondent, Jack R. McCahan, be enjoined and restrained from doing the acts and rendering the services in the State of Ohio which are alleged in said application, and for such other relief as may seem just and equitable.

The answer of the respondent admits that he is not licensed to practice law in the State of Ohio; admits that he is preparing and completing various forms relating to claims under the Workmen's Compensation Act of Ohio.

The respondent further says that he is authorized by the rules and regulations of the Industrial Commission of Ohio to perform the services which he is performing. The respondent further denies each and every allegation.

The Master Commissioners then filed a reply denying the respondent is authorized by the rules and regulations of the Industrial Commission of Ohio to perform the services which he is performing.

The issue to be determined, therefore, is whether or not all or any of the actions of Jack R. McCahan, in representing claimants before the Bureau of Workmen's Compensation and the Industrial Commission, constitute the unauthorized practice of law, since Jack R. McCahan, admittedly is not an attorney at law.

The material facts as shown by the evidence are as follows:

The respondent is a resident of Canton, Ohio. He has never at any time in the past been admitted or licensed to practice law or to represent that he is qualified or authorized to do so; and he does not possess the educational and professional qualifications necessary to enable him to practice law in this State.

The respondent maintains an office in the First National Bank Building in Canton, Ohio, engaged in Workmen's Compensation Service and has been engaged in such practice approximately eighteen years. He was a former member of the Canton Regional Board of Claims of the Industrial Commission of Ohio. He carries a handbook for employers and employees to keep himself refreshed on the compensation law.

The respondent has in his office certain legal booklets and works dealing with the Workmen's Compensation Law, among which are Snyder's Compensation Law, Campbell's Workmen's Compensation Law, and Gray's Textbook of Medicine, and a book on Occupational Diseases.

The respondent has handled between one hundred (100) to one hundred fifty (150) claims a year in his practice.

The respondent requests claimants to sign an authorization form, which authorizes the respondent McCahan and an attorney of McCahan's selection, to review claimant's file, and also it puts the Industrial Commission on notice that respondent and the attorney represent the claimant.

The respondent during his eighteen years of practice has used the same attorney from Columbus, Ohio, to do work for him (McCahan) in Columbus. In most instances, the claimant did not know he would authorize an attorney to review his claim or that he was retaining the services of an attorney. In many instances, the claimants did not know nor even meet the attorney.

The evidence disclosed that the respondent, Jack R. McCahan, did perform the following services:

1. He prepared practically all forms issued by the Industrial Commission of Ohio, some of which are the following:

| | |
|---|---|
| C-1 | Claimants Original Application |
| C-3 | Application for Medical Expense Only |
| C-8 | Application for Additional Award For Violation of Specific Requirement |
| C-9 | Application for Additional Award For Violation of Specific Requirement in Fatal Case |
| C-16 | Hospital Fee Bill |
| C-19 | Attending Physicians Fee Bill |
| C-20 | Nurses Fee Bill |

| | |
|---|---|
| C-22 | Affidavit As To Hernia |
| C-27 | Non-complying Employer |
| C-32 | Application for Lump Sum Payment |
| C-44 | Physicians Certificate in Proof of Death |
| C-57 | Self Insurer |
| C-71* | Applications Pertaining to Public Employees |
| C-72* | Applications Pertaining to Public Employees |
| C-84 | Supplemental Report Of Physician |
| C-85 | Application To Modify A Previous Award |
| C-85a. | Application For Additional Compensation Beyond Date of Last Payment |
| C-86 | Motion |
| C-88 | Application For Reconsideration |
| C-90 | Employees Notice of Election |
| C-92 | Application for Determination of Permanent Partial Disability |
| C-94a | Wage Statement Form |
| O D | Forms Pertaining to Occupational Diseases |
| Y-12 | Notice of Appeal |

2. He prepared affidavits to support claims.

3. He reviewed files of the Industrial Commission and determined whether the claimant was entitled to further compensation.

4. He selected the proper forms, not the claimant, in order to fit the client's legal needs.

5. He advised claimants whether or not they had a compensable injury, and how much compensation they would receive.

6. He has to have knowledge of the Workmen's Compensation Law in his practice in preparing affidavits, forms, other papers, to properly represent his claimants and whether claimants are entitled to compensation.

7. He advised claimants that the Workmen's Compensation Law does not cover a man injured away from his employment.

8. He determined whether a claim 'should be filed as an injury or occupational disease.

9. He gave instructions to his claimants, and that he wanted his claimants to report to him as to everything that goes on in the claim.

10. He made an analysis and advised claimants of evidence introduced at the hearings.

11. He advised claimants as to disability.

12. He attended hearings before the Administrator, presented facts, discussed disability, propounded questions, advanced arguments, in order to establish the compensability of claims.

13. He advised claimants as to their rights under the claimant's election in reference to permanent partial disability compensation, and determined which was most advantageous under the law for the claimant.

14. He prepared and filed applications for lump sum settlements; took claimants to Columbus to attend hearings on settlements.

15. He made analysis and advised claimants whether to make a settlement of their claim or continue to receive compensation.

16. He advised claimants to accept offers of settlement.

17. He prepared and filed applications in cases of non-complying employers where claimant had option to file a claim with the Industrial Commission or to file suit against the employer.

18. He prepared and filed notices of appeal to the Board of Review and the Industrial Commission.

19. He determined whether an appeal was necessary.

20. He interpreted the Workmen's Compensation Law and the rules and regulations of the Industrial Commission for claimants he represented.

21. He advised claimants as to their rights in regard to violations of specific safety requirements.

22. He was associated with an attorney in Columbus, Ohio, who did work on claims for McCahan in Columbus, Ohio.

23. He represented claimants for compensation.

In 1911, the General Assembly of the State of Ohio enacted laws for the purpose of providing economic assistance for workmen who were injured in the course of their employment and for the dependents of workmen who were killed while so engaged in their employment. The initial step was the creation by the 79th General Assembly of the State Liability Board of Awards. That Board had a very brief existence, and in 1912, **Article II, Section 35, Ohio Constitution,** was adopted, authorizing the enactment of laws providing for compulsory contributions by employers to a state fund and for the creation of a board to administer and distribute such fund. In 1913 the 80th General Assembly enacted laws creating the Industrial Commission of Ohio.

The Workmen's Compensation Law has never been a static thing; succeeding sessions of the legislature have, step by step, made consistent efforts to amend and revise this portion of our statutory law to meet the needs created by the changing economic, social, and industrial conditions of the state. From the inception of the Workmen's Compensation Law there seems to have been a steady although sometimes slow, increase in the amounts of compensation which could be paid on a weekly basis to an employee who suffered an injury, thereby being entitled to compensation.

Through the years the weekly compensation payments have increased at a gradual rate. The maximum at one time was Twelve Dollars per week, and at the present time the sum is Forty Nine Dollars per week. Death benefits have, of course, been raised from time to time in line with changing conditions. Not only have the weekly benefits been the subject of much legislative attention, so have the overall maximum sums payable.

Let us now turn our attention to some of the varying procedures which are and have been prescribed by law for the presentation of claims to the Industrial Commission, the consideration and allowance or denial of such claims by the Commission, and more recently by the Bureau of Workmen's Compensation, and the ultimate appeal to a court for further review of any situation in which a controversy has arisen.

At the time the State Liability Board of Awards was created in 1911, the Act read in part:

"The board shall have full power and authority to hear and determine all questions within its jurisdiction, and its decision thereon shall be final."

"Provided, however, in case the final action of such board denies the right of the claimant to participate at all in such fund on the ground that the injury was self-inflicted or on the ground that the accident did not arise in the course of employment, or upon any other ground going to the basis of the claimant's right, then the claimant within thirty (30) days after the notice of the final action of such board may, by filing his appeal in the common pleas court of the county wherein the injury was inflicted, be entitled to a trial in the ordinary way, and be entitled to a jury if he demands it. * * *"

The foregoing was then §1465-75 GC. In 1913, the General Assembly amended the sections of the law which expressly granted powers to the State Liability Board of Awards, and at that time the quoted language from §1465-75 GC, was incorporated in §1465-90 GC. At the same session the legislature enacted §871-1 et seq, GC, creating the Industrial Commission of Ohio. By §871-12 GC, all of the duties of the State Liability Board of Awards were transferred to and vested in the Industrial Commission. Sec. 1465-90 GC, was amended in 1917, but the procedure was still the relatively simple one under which the Industrial Commission made an original determination, and an appeal could be taken by the claimant to a common pleas court from an adverse ruling.

By 1937, however, the procedure before the Industrial Commission became more complex; at that time, the General Assembly again amended §1465-90 GC. This section then provided for an application for rehearing before the Commission to be filed by a claimant in those claims where a determination against the claimant had been based upon any one of several reasons set forth in the statute. The law then directed that a hearing should be held and evidence should be submitted as in the trial of civil actions and the admissibility of evidence should be ruled upon by the Commission. If the order after such rehearing was adverse to the claimant's right to participate in the fund or to continue to receive compensation and was based upon one of the grounds set forth in the statute, the claimant could then appeal to the common pleas court.

At the same session of the legislature, §1465-44a GC, was enacted creating four Boards of Claims and granting to them powers to investigate, hear, and decide claims. Two years later the latter section was amended; among other things, the Commission was now directed to refer claims to the various Boards of Claims, within the discretion of the Industrial Commission; further, both claimants and employers were now authorized to file an application for reconsideration, review, or modification by the Industrial Commission. This section continued to receive legislative attention and was finally repealed in 1955; it was then known as §4123.14 R. C. At that time, five Regional Boards of Review were created which are presently part of the appellate system for considering claims.

In 1955, sweeping changes were made in the procedure for hearing

and passing upon claims for workmen's compensation and for ultimate review by the courts in the case of disputed claims. The Bureau of Workmen's Compensation was created by §4121.12 R. C. By §4121.121 R. C., then enacted, the Administrator of the Bureau was directed to decentralize and relocate the personnel and activities of the Bureau so that the receipt, investigation, determination and payment of claims might be handled in the first instance in the general area of the claimant's residence or the place where the injury occurred. Initial action on claims for compensation under the Workmen's Compensation Law now became the responsibility of the newly created Bureau.

Also in 1955, §§4123.515 to 4123.519 R. C., were enacted. The Administrator was then directed to hear and determine all disputed claims, allowing both the employee and the employer an opportunity to be heard; either the employee or employer could file an application for reconsideration by the Administrator. Likewise, either the claimant or employer could now appeal, either with or without the intervening step of reconsideration by the Administrator, to a Regional Board of Review and then to the Industrial Commission. The parties were entitled to be heard by the proper Regional Board of Review. After appropriate action by the Industrial Commission pursuant to an appeal from an order of such Regional Board, either the claimant or employer could, in any proper case, appeal to a court of common pleas.

These sections have continued to receive legislative attention, but it seems that we need mention here only one change made by the last legislature in §4123.519 R. C.; a claimant may now appeal directly to a court from a decision of the Administrator in response to an application for reconsideration or from an order of a Regional Board of Review.

There are many areas in the cmpensation law which reflect this trend toward greater complexity in the law itself and in its administration. For example, the word "injury" has been the subject of considerable attention and varied interpretations. There have been many definitions concerning the word "injury" as contemplated within the meaning of the Workmen's Compensation Law, and the General Assembly has expressed dissatisfaction with this line of cases and rulings by amending §4123.01 R. C. It seems probable that the statutory definition of the word "injury," which became effective November 2nd, 1959, may, in the future receive further judicial attention. Then, too, once it has been established that an "injury" has in fact occurred, there may arise the related questions concerning whether it was received in the course of and arising out of employment and what disabilities actually have resulted from or are related to such injury.

There are many other questions which are inherent in any claim for compensation, which makes it immediately apparent that the proceedings before the administrative agencies are quite important to all interested parties. It must be determined what evidence actually exists and as to what extent such evidence should be presented in the successive hearings for consideration by the administrative agencies. As any claim proceeds through such administrative steps, it must be determined by or on behalf of the parties whether to appear and present

evidence or whether to rely upon a review of the proof which has become a matter of record.

Then, too, there are other questions which arise, such as the determination of an average weekly wage, different types of compensation or kinds of benefits which may be of considerable financial aid to an injured workman. He must understand the different benefits which may be available to him and proceed in the prescribed manner to procure the appropriate benefits. Many other instances could be mentioned wherein it becomes necessary to have a thorough understanding of the Workmen's Compensation Law in order to properly advise a claimant of his rights under the law.

It seems to be quite apparent to us that the present requirement of successive procedural steps bears little resemblance to the rather simple plan first prescribed. At that time an employee presented his claim to the Industrial Commission of Ohio; if he received an adverse ruling upon a statutory ground, he appealed to a court. Now he must not only proceed through the statutory procedures within the prescribed time, but he must determine which road he will take. He may request reconsideration by the Administrator or he may appeal to a Regional Board; if he wishes to pursue his claim further, he must now determine whether to appeal first to the Industrial Commission or directly to a court. Then, too, employers may now appeal as provided by statute, and also there are many situations in which the presentation of evidence may be of primary importance; moreover, appeals to a court may not be made in all cases. Such appeals may be made only in injury cases, and a decision as to the extent of disability is not an order which may be reviewed by a court of common pleas.

There are many complicated factual and legal questions and perplexing problems which are involved in the Workmen's Compensation Law of this state. The field covered by the Workmen's Compensatior Law is comprehensive and that one who practices in that field must understand its legal ramifications. He should from a lawyer's standpoint, be able understandingly to weigh evidence and co-ordinate the testimony and its application to the statutes.

The Administrator and the Board considers legal questions, applies legal rules and weighs facts in the light of legal principles. The proceedings are conducted much as in court. They are essentially of a judicial character.

We are not unmindful that the Workmen's Compensation Board has been denominated an administrative tribunal, less formal than a court, . . . and that established rules and principles of common law practice are not to be rigorously applied in the proceedings. ·

But even in compensation cases the material findings must have a basis of legal proof on which to rest.

While neither the Board nor the referees are bound by technical rules of testimony, all findings of fact shall be based only upon competent evidence. Therefore, examination and cross-examination of witnesses require a knowledge of relevancy and materiality. (Shortz v. Farrell, 327 Pa. 81.)

The principle is well established by numerous decisions that a court

of equity has jurisdiction to prevent by injunction the unlawful practice of law by a layman when such relief is sought by the members of the legal profession, or a committee of the Bar Association.

The phrase "practicing law" or its equivalent, "the practice of law," has long had a sufficiently definite meaning throughout this country, to be given a place in both constitutional and statutory law without further definition.

However, we wish to refer to the definition which the Supreme Court of Ohio enunciated in the **Dworken case, 129 Oh St 23.**

"1. The practice of law is not limited to the conduct of cases in court. It embraces the preparation of pleadings and other papers incident to actions and special proceedings, and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, **and in general all advice to clients and all action taken for them in matters connected with the law."** (Emphasis ours.)

It is clear that a licensed attorney in the practice of law generally engages in three principal types of professional activity. These types are legal advice and instructions to clients to inform them of their rights and obligations; preparation for clients of documents and papers requiring knowledge of legal principles which is not possessed by an ordinary layman; and appearance for clients before public tribunals, which possess the power and authority to determine rights of life, liberty and property according to law, in order to assist in the proper interpretation and enforcement of law.

Under the Workmen's Compensation Law, the procedure in a disputed claim is that a hearing is held before the Administrator or one of his deputies, and both sides are afforded an opportunity to be heard, present testimony and facts pertinent to the claim. There can be no question but what this becomes an adversary hearing as many controversial issues or points may be raised, such as whether or not an accidental injury was sustained within the meaning of the law, whether the application was filed within the statutory period, whether there is sufficient medical evidence, whether the average weekly wage has been established, whether the injury was sustained in the course of and arising out of employment, and other issues may be raised at such hearing.

It is well settled that it is the character of the act which is the decisive factor in determining whether the act constitutes the practice of law.

As to the character of the acts of the respondent Jack R. McCahan, his appearance before the Administrator or Deputy Administrator, or the Industrial Commission, or any of the referees in behalf of a claimant, in a representative capacity, in adversary proceedings where controversial questions are raised, certainly constitutes the practice of law.

It is clear beyond question that the respondent, in appearing on behalf of claimants for compensation at hearings, before the Industrial Commission, the Administrator, and the duly appointed deputies and referees, and in preparing notices of appeal from the rulings of the Administrator, preparing other forms and papers, the giving of advice to claimants as to their rights and the other acts and services rendered by the respondent, Jack R. McCahan, engaged in the practice of law, and

that such conduct on his part constituted the unauthorized practice of law which may be prevented by injunction.

One who, for a fee, contingent or otherwise, advises others as to their legal rights, the method to be pursued, the forum to be selected and the practice to be followed for the enforcement of such rights, is engaged in the practice of law. (People, ex rel., Chicago Bar Assn., Relator, v. Goodman, 366 Ill. 346; also 3 N. E. (2d), 746 Mass.)

The Court is clearly of the opinion that the giving of advice as to whether a claim is good or not is the giving of advice as to legal rights. This is essentially the character of the service that is performed by an attorney in the practice of law.

The respondent contends that he is authorized by the rules and regulations of the Industrial Commission of Ohio to perform the services he is performing.

Sec. 4123.05 R. C., empowers the Industrial Commission to adopt reasonable rules and regulations in the administration of the Workmen's Compensation Law. The statutes do not authorize the Industrial Commission to promulgate a rule by which a layman may appear in behalf of a claimant or employer in hearings before the Industrial Commission or Administrator or in any other capacity.

But even if the statute attempted to authorize the Industrial Commission to promulgate a rule of that character, such provision of the statute would be void as a legislative encroachment upon the inherent power of the judicial department of the government.

The state Industrial Commission, as an administrative agency, is without power or authority by rule or otherwise to permit a layman, who is not a duly licensed attorney, to practice before the Industrial Commission and Bureau of Workmen's Compensation, and any rule or regulation which attempts to permit a layman who is not a duly licensed attorney to practice before the Industrial Commission and Bureau of Workmen's Compensation is void and of no force or effect.

The respondent has introduced evidence that other laymen such as actuaries and service organizations, represent employers. The position of an employee and of an employer in the Workmen's Compensation System is quite different. A disabled employee is claiming an award out of the State Insurance Fund; a covered employer is paying premiums into the Fund.

The premium is based upon the employer's payroll of employees within the coverage of the Act, the rate of premium being based upon the character or class of employment in which the workmen are engaged, and individual experience of the employer; that is, the individual employer's experience is compared to the average for the industry of which he is a part, and his net premium rate is then determined by a merit-rating modification, which can vary between a credit of 85 percent and a penalty of 85 percent.

Many large employers therefore institute within their own organization an audit and claims procedure which attempts to control and verify the cost of the Workmen's Compensation Act in the same manner that the employer would attempt to control and verify any other business cost.

Some employers hire management service organizations to perform this function in the same manner that employers hire accountants and auditors, and in the same manner that insurance companies hire claim adjustors. These service organizations record and audit the company's claims and rates and provide facts to the Bureau and the Industrial Commission to assist in the processing of claims.

To the extent that these services are confined to the auditing of rates and classifications, and the presentation of facts and figures to the Bureau of Workmen's Compensation and the Industrial Commission, in regard to such rates and classifications, such services in our opinion do not constitute the practice of law.

It seems to us that it is the function of an actuary and a service organization to furnish facts from the records without concern for their legal effect.

Of course, when an actuary or an employee of a service organization goes further and undertakes to give advice as to legal rights or render a service as outlined in the within case, he then enters the realm of the practice of law.

It is essential to the administration of justice and the proper protection of society, that unlicensed persons be not permitted to prey upon the public by engaging in the practice of law.

In modern times, the affairs of the people requiring the services of a lawyer have become more intricate and complex, demanding a corresponding increase in the standards of the profession through preliminary education, and a lengthened and more diversified course of study by those who would engage in the practice.

Aside from the pleadings, the practice before the Bureau of Workmen's Compensation and the Industrial Commission, the burden of proof and the competency of the evidence are practically the same as in actions at law for recovery of damages for personal injuries.

The court has carefully reviewed the evidence and the briefs of counsel and has made examination of the law.

It is the finding and judgment of the court that it is not within the power of a Bureau or of the legislature to say and define what actions and conduct constitute the practice of law in Ohio. That it is solely within the power of the courts to say what actions and conduct constitute the practice of law in Ohio.

It is our opinion, that the use of the knowledge of the Workmen's Compensation Law and decisions required to prepare applications and papers pertaining to the Workmen's Compensation Law, in such a way that valuable rights would not be lost, and the giving of advice to clients and all action taken for them in matters connected with the Workmen's Compensation Law, whether or not a fee is charged, constitutes the practice of law in Ohio.

It is the finding and judgment of the court that the actions and conduct of Jack R. McCahan in representing claimants before the Bureau of Workmen's Compensation and the Industrial Commission, as disclosed by the evidence in the case, constituted the practice of law, and he is hereby enjoined from all such actions and conduct.

GRAHAM and WEBER, JJ, concur.