IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 12-1410

_____

FILED

June 5, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. OLEN L. YORK, III,
Petitioner

v.

WEST VIRGINIA OFFICE OF DISCIPLINARY COUNSEL and WEST VIRGINIA
LAWYER DISCIPLINARY BOARD,
Respondents

_____

Petition for Writ of Prohibition

WRIT DENIED

_____

Submitted: April 24, 2013
Filed: June 5, 2013

Lonnie C. Simmons, Esq.
DiTrapano, Barrett & DiPiero, PLLC
Charleston, West Virginia
and
Robert B. Kuenzel, II, Esq.
Kuenzel & Associates, PLLC
Chapmanville, West Virginia
Attorneys for Petitioner

Renee N. Frymyer, Esq.
Lawyer Disciplinary Counsel
Office of Disciplinary Counsel
Charleston, West Virginia
Attorney for Respondents

JUSTICE WORKMAN delivered the Opinion of the Court.
SYLLABUS BY THE COURT

1. "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W.Va. Code 53-1-1." Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977).

2. "'"'"'Before this Court may properly issue a writ of mandamus three elements must coexist: (1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of the respondent to do the thing the petitioner seeks to compel; (3) the absence of another adequate remedy at law.' Syllabus Point 3, *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981)." Syl. pt. 1, *Meadows v. Lewis*, 172 W.Va. 457, 307 S.E.2d 625 (1983).' Syl. pt. 2, *State ex rel. Blankenship v. Richardson*, 196 W.Va. 726, 474 S.E.2d 906 (1996)." Syl. Pt. 1, *State ex rel. East End Ass'n v. McCoy*, 198 W.Va. 458, 481 S.E.2d 764 (1996).

3. "The exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals." Syl. Pt. 1, *State ex rel. Askin v. Dostert*, 170 W.Va. 562, 295 S.E.2d 271 (1982).

i

4. "This Court retains the inherent power to regulate the practice of law in this State, and under Rule 1 of the Rules of Lawyer Disciplinary Procedure, as amended by this court on December 6, 1994, a lawyer is subject to discipline in this State for violating the West Virginia Rules of Professional Conduct if he or she engages in the practice of law in this State, whether or not he or she is formally admitted to practice by this Court." Syl. Pt. 6, *Lawyer Disciplinary Bd. v. Allen*, 198 W.Va. 18, 479 S.E.2d 317 (1996).

5. Pursuant to Rule 1 of the West Virginia Rules of Lawyer Disciplinary Procedure, the West Virginia Rules of Professional Conduct govern the conduct of an attorney who practices law in this state or provides or offers to provide legal services in this state, even where such attorney's practice consists entirely of federal matters. In such circumstances, the West Virginia Office of Disciplinary Counsel and the West Virginia Lawyer Disciplinary Board have jurisdiction to investigate the alleged misconduct and recommend disciplinary action against the attorney regardless of whether the attorney is a member of the West Virginia State Bar.

Workman, Justice:

Mr. Olen York (hereinafter "the petitioner") seeks a writ of prohibition to prevent the West Virginia Office of Disciplinary Counsel (hereinafter "ODC") and the West Virginia Lawyer Disciplinary Board (hereinafter "LDB") from proceeding against him in an attorney disciplinary matter. During the relevant time period, the petitioner was registered to practice as a patent attorney before the United States Patent and Trademark Office (hereinafter "PTO") and was affiliated with the Waters Law Group in Huntington, West Virginia. The petitioner contends that the ODC and LDB lack jurisdiction over him because he was not a licensed member of the West Virginia State Bar and was not practicing law in West Virginia. Upon a thorough review of the briefs, arguments of counsel, joint appendix, and applicable precedent, we deny the relief sought by the petitioner.

## I. Factual and Procedural History

The petitioner, the ODC, and the LDB stipulate to certain pertinent facts, including the petitioner's admission as a licensed member of the Ohio Bar in July 2002 and his admission to practice law before the PTO[1] in January 2003. The parties also stipulate that the petitioner is a resident of Milton, West Virginia, and was associated as an independent contractor with the Waters Law Group in Huntington, West Virginia, during the relevant time period. As also stipulated by the parties, the petitioner is not a member of the West Virginia

---

[1]The PTO is a federal agency with offices located in Alexandria, Virginia.

State Bar, and his practice was limited to patent and trademark issues before the PTO while associated with the Waters Law Group. The petitioner represented clients from West Virginia, but he did not appear in the state courts of West Virginia.

On September 24, 2012, a Statement of Charges was issued against the petitioner by the Investigative Panel of the LDB. The LDB alleged that the petitioner violated Rules 1.15(a), 1.15(b), 1.15(d), 8.4(c), and 8.4(d) of the West Virginia Rules of Professional Conduct[2] by improperly processing payments for patent work performed for clients in Poca, West Virginia, and Spencer, West Virginia, while associated with the Waters Law Group. This Statement alleged that the petitioner failed to maintain a separate client account; failed to notify the Waters Law Group of funds received from clients; failed to maintain an IOLTA[3] account; and commingled, misappropriated, and converted funds for his own use.[4]

---

[2]Rule 1.15 of the West Virginia Rules of Professional Conduct addresses the safekeeping of property, and Rule 8.4 addresses misconduct involving dishonesty and conduct prejudicial to the administration of justice.

[3]IOLTA is an acronym for Interest on Lawyers Trust Accounts.

[4]The LDB alleges in the Statement of Charges that the petitioner terminated his affiliation with the Waters Law Group in Huntington, West Virginia, in July 2009, and announced that he had accepted a position with the law firm of Spilman Thomas and Battle, PLLC. The petitioner thereafter allegedly contacted two clients he had represented while affiliated with the Waters Law Group and obtained funds those clients owed for patent services. The petitioner allegedly deposited such payments into his own personal checking account. These allegations of impropriety have not been fully investigated, due to the filing of this petition addressing a jurisdictional issue. This Court passes no judgment on the merits

(continued...)

2

On November 29, 2012, the petitioner filed a writ of prohibition with this Court, contending that the ODC and LDB lack jurisdiction to prosecute the alleged violations against him, under Rule 1 of the West Virginia Rules of Lawyer Disciplinary Procedure and federal preemption principles, because he was not licensed to practice law in the State of West Virginia and was not practicing law in this state.[5]

## II.  Standard of Review

---

[4](...continued)
of the claims against the petitioner and addresses only the jurisdictional issue in this opinion. This Court also notes that the PTO is conducting an investigation into the allegations contained within the Statement of Charges.  The supplement to the joint appendix submitted to this Court includes a December 6, 2012, letter from a staff attorney for the PTO Office of Enrollment and Discipline addressing possible violations of PTO Disciplinary Rules, 37 C.F.R. §§ 10.23(b)(1), (4), (5), (6), and 10.112.

[5]When this Court reviewed a petition for a writ of prohibition in *State ex rel. Potter v. Office of Disciplinary Counsel of State*, 226 W.Va. 1, 697 S.E.2d 37 (2010), we treated that petition as a request for a writ of mandamus, reasoning that prohibition lies against only judicial and "quasi-judicial tribunals" and that the ODC did not have quasi-judicial authority. *Id*. at 2 n.1, 697 S.E.2d at 38 n.1 (quoting *State ex rel. Affiliated Constr. Trades Found. v. Vieweg*, 205 W.Va. 687, 692, 520 S.E.2d 854, 859 (1999)).  In the present case, however, a writ of prohibition is also sought against the LDB, acting as a quasi-judicial tribunal. *See Farber v. Dale,* 182 W.Va. 784, 786, 392 S.E.2d 224, 226 (1990) (holding that "the West Virginia State Bar Committee on Legal Ethics [predecessor to the current Investigative Panel of the LDB] is a quasi-judicial tribunal.").  Thus, this Court will address the petitioner's requests as a petition for a writ of mandamus to compel the ODC to cease further investigation and a petition for a writ of prohibition to prevent the LDB from prosecuting the alleged violations.

In addressing this Court's obligations in response to a request for a writ of prohibition, we have explained that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W.Va. Code 53-1-1." Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977).[6] A writ of prohibition "lies as a matter of right whenever the inferior court (a) has not jurisdiction or (b) has jurisdiction but exceeds its legitimate powers and it matters not if the aggrieved party has some other remedy adequate or inadequate." *State ex rel. Valley Distrib., Inc. v. Oakley*, 153 W.Va. 94, 99, 168 S.E.2d 532, 535 (1969).

With regard to a writ of mandamus, this Court has explained that the function of mandamus is to enforce "an established right" and a "corresponding imperative duty created or imposed by law." *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 398, 540 S.E.2d 917, 922 (1999). In syllabus point one of *State ex rel. East End Association v. McCoy*, 198 W.Va. 458, 481 S.E.2d 764 (1996), this Court held as follows:

> Before this Court may properly issue a writ of mandamus three elements must coexist: (1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal

---

[6]West Virginia Code § 53-1-1 (2009) provides as follows: "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers."

4

> duty on the part of respondent to do the thing the petitioner seeks to compel; (3) the absence of another adequate remedy at law.

198 W.Va. at 460, 481 S.E.2d at 766, syl. pt. 1 (internal citations and quotation marks omitted). Utilizing those standards as guidance, we examine the petitioner's requests.

## III. Discussion

The sole issue in this case is whether the ODC and LDB have jurisdiction to investigate and potentially prosecute the petitioner for alleged violations of the West Virginia Rules of Professional Conduct. The petitioner presents two primary arguments: first, he contends that the ODC and LDB lack jurisdiction under the rules and precedent of this state; second, he contends that federal law preempts state law regulation of this disciplinary matter. There is convergence of those two issues within the decisions addressed herein; to the extent possible, however, this Court evaluates those two arguments independently.

### A. The Authority of this Court to Control the Practice of Law in this State

With specific reference to this Court's ultimate authority to regulate the practice of law in this state, we noted in syllabus point one of *State ex rel. Askin v. Dostert*, 170 W.Va. 562, 295 S.E.2d 271 (1982), that "[t]he exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Supreme Court of Appeals." We also explained as follows in *Shenandoah Sales & Service, Inc. v. Assessor of Jefferson County,* 228 W.Va. 762, 724 S.E.2d 733 (2012):

The West Virginia Constitution provides that this Court has "the power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, process, practice and procedure, which shall have the force of law." W. Va. Const. art. 8, § 3. The power embodied in this constitutional provision extends to supervision of the practice of law, as directly stated in Syllabus Point 1 of *Lane v. West Virginia State Board of Law Examiners*, 170 W.Va. 583, 295 S.E.2d 670 (1982), "[a]rticle eight, section one *et seq.* of the West Virginia Constitution vests in the Supreme Court of Appeals the authority to define, regulate and control the practice of law in West Virginia."

228 W.Va. at ___, 724 S.E.2d at 741.

The obligation of this state's disciplinary authorities to investigate issues of alleged attorney misconduct is enunciated in Rule 1 of the West Virginia Rules of Lawyer Disciplinary Procedure, providing that the LDB shall

investigate complaints of violations of the Rules of Professional Conduct promulgated by the Supreme Court of Appeals to govern the professional conduct of those admitted to the practice of law in West Virginia *or any individual admitted to the practice of law in another jurisdiction who engages in the practice of law in West Virginia. . . .*

W.Va. R. Law. Disc. P. 1 (1994). The petitioner contends that Rule 1 does not authorize the ODC and LDB to investigate his conduct because he is neither licensed to practice law in West Virginia nor does he practice law in West Virginia. It is undisputed that the petitioner is not admitted to the practice of law in West Virginia; thus, this Court's resolution of the jurisdictional question hinges upon a determination of whether the petitioner's practice of patent law in an office located in Huntington, West Virginia, constituted the "practice of law

6

in West Virginia," subjecting him to the disciplinary authority of the ODC and LDB. This Court has not had occasion to decide whether the practice of patent law in this state constitutes the "practice of law in West Virginia," as that phrase is used in Rule 1 of the West Virginia Rules of Lawyer Disciplinary Procedure.[7]

This Court, in the exercise of its constitutionally-granted power to promulgate rules regulating the practice of law, formulated a thorough "Definition of the Practice of Law" on March 28, 1947, and later amended on June 1, 1961. That definition provides that "[i]n general, one is deemed to be practicing law whenever he or it furnishes to another

[7]The inclusion of the phrase "or any individual admitted to the practice of law in another jurisdiction who engages in the practice of law in West Virginia" was indicative of a progressive stance on the issue when that language was added in 1995. Local admission had traditionally served as the basis for lawyer discipline, and states had not typically authorized discipline of attorneys *other than* those licensed in the host state. As recently as 2002, for instance, an overview of state disciplinary rules revealed that a minority of states applied disciplinary rules to *both* members of the state bar and other attorneys practicing law in the host state. Charles W. Wolfram, *Expanding State Jurisdiction to Regulate Out-of-State Lawyers*, 30 Hofstra L.Rev. 1015, 1050 (2002); *see, e.g.,* Ark. R. of Prof'l Conduct 8.5 (1997) (applying rules to admitted lawyers or lawyers "practicing in this jurisdiction."); Idaho R.of Prof'l Conduct 8.5 (2000) (lawyers from other jurisdictions are subject to Idaho disciplinary rules "with respect to any practice of law conducted in this state."); Md. R. of Prac. and P. 16-701(a) (2000) (providing that "attorney" includes a person not admitted but "who engages in the practice of law in this State."); N.D. R. of Prof'l Conduct 8.5 (2000) (stating that rule applies to lawyers admitted elsewhere "who actually engage in this jurisdiction in the practice of law" in North Dakota). With the advent of the ABA Model Rules specifically addressing multidisciplinary practice issues, as discussed in this opinion, other states have gradually adopted more comprehensive approaches to their disciplinary rules. *See* Eli Wald, *Federalizing Legal Ethics, Nationalizing Law Practice, and the Future of the American Legal Profession in the Global Age*, 48 San Diego L. Rev. 489, 493 (2011); Cynthia L. Fountaine, *Have License, Will Travel: An Analysis of the New ABA Multijurisdictional Practice Rules*, 81 Wash. U. L.Q. 737, 759 (2003).

advice or service under circumstances which imply the possession or use of legal knowledge and skill." Further, that definition provides:

> More specifically but without purporting to formulate a precise and completely comprehensive definition of the practice of law or to prescribe limits to the scope of that activity, one is deemed to be practicing law whenever (1) one undertakes, with or without compensation and whether or not in connection with another activity, to advise another in any matter involving the application of legal principles to facts, purposes or desires; (2) one undertakes, with or without compensation and whether or not in connection with another activity, to prepare for another legal instruments of any character; or (3) one undertakes, with or without compensation and whether or not in connection with another activity, to represent the interest of another before any judicial tribunal or officer, or to represent the interest of another before any executive or administrative tribunal, agency or officer otherwise than in the presentation of facts, figures or factual conclusions as distinguished from legal conclusions in respect to such facts and figures.

Michie's West Virginia Code Annotated State Court Rules, Definition of the Practice of Law, in part, at 983 (2013).

In *State ex rel. Frieson v. Isner*, 168 W.Va. 758, 285 S.E.2d 641 (1981), a case involving allegations of unauthorized practice of law, this Court explained that courts have uniformly expressed difficulty in articulating a precise definition of the practice of law and have emphasized "that the practice of law is not limited to the conduct of cases before courts, but also includes services rendered outside court. . . ." *Id.* at 768, 285 S.E.2d at 650.[8]

---

[8]In footnote two of *Frieson*, this Court observed:

(continued...)

8

In *Lawyer Disciplinary Board v. Allen*, 198 W.Va. 18, 479 S.E.2d 317 (1996), this Court addressed the issue of whether attorney conduct occurring "outside of our State" could be subject to discipline under the West Virginia Rules of Professional Conduct. *Id*. at 25, 479 S.E.2d at 324. In *Allen*, ethics charges had been filed against Ohio and District of Columbia attorneys who were not licensed members of the West Virginia State Bar *and* did not practice law from a geographic location within this state. This Court found that the out-of-state attorneys who solicited clients from West Virginia for cases that could be filed in West Virginia courts were subject to discipline in West Virginia, "even if the conduct constituting a violation occurs outside of our State." *Id*.[9]

---

[8](...continued)
> Arriving at a concise definition of what constitutes the practice of law has proven difficult for most courts. Many courts have declined to formulate a definition at all, claiming it to be an exercise in the pursuit of the definitional Holy Grail. *State v. Indiana Real Estate Ass'n Inc*., 244 Ind. 214, 191 N.E.2d 711 (1963). Some jurisdictions have suggested that the term "practice of law" has acquired such universal usage and meaning in the English language so as to neither permit nor require definition. *McMillen v. McCahan*, 83 Abs. 1, 14 Ohio Op.2d 221, 167 N.E.2d 541 (1960); *R. J. Edwards Inc. v. Hert*, 504 P.2d 407 (Okl. 1972). The suggestion from these decisions is that the meaning of the practice of law is so self-evident as to defy definition and that an attempted definition may prove to be counterproductive.

168 W.Va. at 768 n.2, 285 S.E.2d at 650 n.2.

[9]The ultimate conclusion in *Allen*, however, was that the out-of-state attorneys had not "regularly engaged in the practice of law" in this state, as Article VI, § 4 of the West Virginia State Bar By-Laws in effect at that time required. 198 W.Va. at 36, 479 S.E.2d at 335. The Rules of Lawyer Disciplinary Procedure were adopted subsequent to the actions of the attorneys in *Allen* and superseded the by-laws. Rule 1 refers only to the practice of law in this state and does not include the word "regularly." In *Allen*, this Court recognized that "under the current jurisdiction of the Lawyer Disciplinary Board, the conduct in which
(continued...)

> This Court retains the inherent power to regulate the practice of law in this State, and under Rule 1 of the Rules of Lawyer Disciplinary Procedure, as amended by this court on December 6, 1994, a lawyer is subject to discipline in this State for violating the West Virginia Rules of Professional Conduct if he or she engages in the practice of law in this State, whether or not he or she is formally admitted to practice by this Court.

*Id.* at 20, 479 S.E.2d at 319, syl. pt. 6.

The petitioner in the present case contends that the *Allen* decision supports his position that only attorneys capable of practicing law in state courts located in West Virginia are subject to the jurisdiction of the ODC and LDB. We disagree. In *Allen*, the attorneys were not operating their legal practices from a location in West Virginia; thus, only the *potential* for a West Virginia practice existed. This Court examined the effect of crossing state lines to obtain clients and determined that the attorneys' actions in *Allen* constituted the practice of law in West Virginia. The petitioner's situation is clearly distinguishable from the *Allen* scenario. His legal undertaking, albeit it federal in nature, was performed from an established West Virginia location for West Virginia clients. Consequently, the decision in *Allen*, while illuminating with regard to this Court's power to regulate the conduct of

---

[9](...continued)
respondents engaged is clearly subject to our disciplinary procedures." 198 W.Va. at 37, 479 S.E.2d at 336.

attorneys practicing law outside the state boundaries, does not provide direct guidance on resolution of the present case.[10]

In an attorney disciplinary matter quite similar to the present case, the Supreme Court of Iowa addressed the authority of the Iowa Attorney Disciplinary Board to discipline an attorney not licensed in Iowa for acts occurring in Iowa in connection with the attorney's federal immigration law practice. *Iowa Sup. Ct. Attorney Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263 (Iowa 2010). The attorney was licensed to practice law in Minnesota but had "maintained offices in Iowa and provided legal services to persons in Iowa on federal immigration matters" for two years. *Id*. at 266. The court explained that Iowa disciplinary authorities had jurisdiction over the attorney, premising its reasoning upon provisions of the Iowa Rules of Professional Conduct adopted by Iowa which mirror Rule 5.5 of the ABA Model Rules.[11] *Id*.

---

[10]Additionally, as correctly noted by the ODC and LDB, although this Court in *Allen* found that the unique facts of *Allen* satisfied the definition of the practice of law, there is no indication that this Court intended to limit its definition to those particular facts. That scenario was simply one of many circumstances which could constitute the practice of law, as that phrase is used in Rule 1.

[11]The petitioner encourages this Court to adopt ABA Model Rule 5.5 and includes a substantial discussion of the ABA Model Rules in his brief, stating as follows:

Petitioner respectfully submits the Court should consider including an adoption of ABA Model Rule 5.5 because it makes it clear that lawyers, such as Petitioner, have the right to practice law, pursuant to their admission to a federal court or agency, without being required to be a member of the bar of the state in which they live and practice.

Rule 32:5.5(d)(2) of the Iowa Rules of Professional Conduct, substantially similar to ABA Model Rule 5.5(d)(2),[12] provides that "[a] lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services in this jurisdiction that . . . are services that the lawyer is authorized to provide by federal law or other law of this jurisdiction." The *Carpenter* court observed that Comment 19 to Rule 32:5.5(d)(2) provides guidance on the jurisdiction of disciplinary authorities: "A lawyer who practices law in this jurisdiction pursuant to paragraphs (c) or (d)

---

[12]The full text of ABA Model Rule 5.5(d), nearly identical to Iowa Rule 32:5.5(d), provides as follows:

> (d) A lawyer admitted in another United States jurisdiction or in a foreign jurisdiction, and not disbarred or suspended from practice in any jurisdiction or the equivalent thereof, may provide legal services through an office or other systematic and continuous presence in this jurisdiction that:
>
> > (1) are provided to the lawyer's employer or its organizational affiliates; are not services for which the forum requires pro hac vice admission; and, when performed by a foreign lawyer and requires advice on the law of this or another jurisdiction or of the United States, such advice shall be based upon the advice of a lawyer who is duly licensed and authorized by the jurisdiction to provide such advice; or
>
> > (2) are services that the lawyer is authorized by federal or other law or rule to provide in this jurisdiction.

12

or otherwise is subject to the disciplinary authority of this jurisdiction. *See* rule 32:8.5(a)."[13]

Iowa Rule 32:8.5(a) provides:

> A lawyer admitted to practice in Iowa is subject to the disciplinary authority of Iowa, regardless of where the lawyer's conduct occurs. A lawyer not admitted in Iowa is also subject to the disciplinary authority of Iowa if the lawyer provides or offers to provide any legal services in Iowa. A lawyer may be subject to the disciplinary authority of both Iowa and another jurisdiction for the same conduct.

> The *Carpenter* case is a textbook example of the implementation of ABA

Model Rules 5.5 and 8.5, as adopted by Iowa, and their application to an out-of-state attorney

---

[13]The ABA Model Rule has exactly the same comment, but refers to Rule 8.5(a) of the Model Rules. The full text of ABA Model Rule 8.5 provides as follows:

(a) Disciplinary Authority. A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs. A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction. A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction for the same conduct.

(b) Choice of Law. In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied shall be as follows:

(1) for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise; and

(2) for any other conduct, the rules of the jurisdiction in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct. A lawyer shall not be subject to discipline if the lawyer's conduct conforms to the rules of a jurisdiction in which the lawyer reasonably believes the predominant effect of the lawyer's conduct will occur.

practicing federal law in a host state without being licensed in that host state. The provisions

of the ABA Model Rules, adopted verbatim or in modified form in most states, address the

realities of modern practice in which attorneys are admitted or practicing in multiple state

and/or federal jurisdictions.[14] The most recent revisions to the ABA Model Rules, not yet

adopted in West Virginia, were formulated subsequent to the ABA's consideration of

proposals submitted by the ABA Commission on Multijurisdictional Practice. In an effort

to guarantee a host state's ability to discipline an out-of-state attorney who practiced law in

a host jurisdiction, the commission revised Model Rule 8.5 to provide that a lawyer

practicing in a jurisdiction in which that lawyer is not admitted is subject to that jurisdiction's

disciplinary rules.[15]

---

[14]The former version of Model Rule 8.5, as still utilized in the West Virginia Rules of Professional Conduct, states that "[a] lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere." *See* W.Va. R. Prof'l Conduct 8.5. Such language is obviously inadequate to address the complexities of multijurisdictional practice and does not resolve the present case because the petitioner is not licensed to practice in West Virginia.

[15]As referenced above, Comment 19 to ABA Model Rule 5.5 also provides that a lawyer practicing pursuant to admission to a federal court or agency, even if not a member of the state's bar, is subject to the disciplinary authority of the state. Although comments to rules are not conclusive authority, the section of the West Virginia Rules of Professional Conduct addressing its scope explains that "[t]he Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule." It further provides that "[t]he Comments are intended as guides to interpretation, but the text of each Rule is authoritative." As the United States District Court for the Northern District of Texas recently noted in *Galderma Laboratories, L.P. v. Actavis Mid Atlantic LLC*, ___ F.Supp.2d ___, 2013 WL 655053 (N.D. Tex. 2013), "[o]ne source for determining how to apply the Model Rules is the comments to the Model Rules. The comments do not add obligations to the Model Rules but provide guidance for practicing in compliance with the Rules." ___ F.Supp.2d at ___, 2013 WL 655053 at *5.

The paucity of authority on the precise issue presented in the case sub judice requires this Court to formulate a reasoned approach to resolution of this matter. Rule 1 of the Rules of Lawyer Disciplinary Procedure clearly provides that this state's disciplinary authorities have jurisdiction over an "individual admitted to the practice of law in another jurisdiction who engages in the practice of law in West Virginia." In applying the principles established in this state regarding precisely what constitutes the practice of law in West Virginia, we hold that pursuant to Rule 1 of the West Virginia Rules of Lawyer Disciplinary Procedure, the West Virginia Rules of Professional Conduct govern the conduct of an attorney who practices law in this state or provides or offers to provide legal services in this state, even where such attorney's practice consists entirely of federal matters. In such circumstances, the ODC and LDB have jurisdiction to investigate the alleged misconduct and recommend disciplinary action against the attorney regardless of whether the attorney is a member of the West Virginia State Bar.

This holding resolves the fundamental question of state disciplinary authority over an attorney practicing federal law in this state, even where such attorney is not licensed in this state, and is consistent with the goal of the West Virginia Rules of Lawyer Disciplinary Procedure to ensure that "[e]very member of the legal profession shall observe the highest standards of professional conduct." W.Va. R. Law. Disc. P. 1. Furthermore, this holding is consistent with the persuasive authority of the ABA Model Rules regarding multidisciplinary practice and the applicability of state disciplinary rules to attorneys engaged

15

in federal practice. Although this Court has not yet adopted those rules, we find that the rationale of Model Rules 5.5 and 8.5 comports with the express intention of this state to authorize disciplinary action against "any individual admitted to the practice of law in another jurisdiction who engages in the practice of law in West Virginia." W.Va. R. Law. Disc. P. 1.

### B. Federal Preemption of State Law

The petitioner also argues that the jurisdictional authority of the ODC and LDB under Rule 1 of the Rules of Lawyer Disciplinary Procedure must be limited by recognition of federal supremacy on this disciplinary issue. In his brief, the petitioner argues that the disciplinary authorities' "attempt to impact Petitioner's ability to practice law directly contradicts the authority he has been granted by the [PTO] and thus, is preempted by federal law." In response, the ODC and LDB argue that the exercise of jurisdiction over the petitioner does not create a conflict between federal and state law and is not in any manner preempted by federal law.

Although the Supremacy Clause of the United States Constitution[16] provides that federal law preempts any conflicting state law, the United States Supreme Court has recognized the broad authority of states to discipline attorneys violating state law and has been circumspect in addressing issues of alleged conflict. In *Sperry v. Florida*, 373 U.S. 379 (1963), for example, the United States Supreme Court addressed an unauthorized practice of law case in which the Florida bar had issued an injunction against a *non-lawyer* patent agent who was licensed to practice before the PTO. The United States Supreme Court, acknowledging that "[t]he preparation and prosecution of patent applications for others constitutes the practice of law," concluded that the non-lawyer was authorized to practice before the PTO and that the State of Florida had no power to enjoin a lay person licensed by

---

[16]Article VI, Section 2 of the United States Constitution provides as follows:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Under the Supremacy Clause, when a state law conflicts or is in some manner incompatible with federal law, the federal law preempts the state law. As this Court articulated in *Harrison v. Skyline Corporation*, 224 W.Va. 505, 686 S.E.2d 735 (2009), "the preemption doctrine has its roots in the supremacy clause of the United States Constitution and is based on the premise that federal law can supplant inconsistent state law." *Id.* at 510, 686 S.E.2d at 740 (citation omitted). Preemption generally occurs in one of three ways: (1) where Congress expressly preempts state law; (2) where federal legislation is so comprehensive that it occupies an entire field of regulation; or (3) where federal law conflicts with state law. *See Barnett Bank of Marion Co. v. Nelson*, 517 U.S. 25, 31 (1996). The present case involves the assertion of preemption through conflict between state and federal law in which "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of [federal law]." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) (internal quotations and citations omitted).

the PTO from the practice of patent law.  *Id.* at 383.  The *Sperry* Court explained that "[t]he State maintains control over the practice of law within its borders *except to the limited extent necessary for the accomplishment of the federal objectives.*"  *Id.* at 402 (emphasis supplied).  The *Sperry* Court noted:

> A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give the State's licensing board [in *Sperry*, the Florida Bar Association] a virtual power of review over the federal determination that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress.

*Id.* at 385 (citations and footnotes omitted).

The *Sperry* decision "stands for the general proposition that where federal law authorizes an agent to practice before a federal tribunal, the federal law preempts a state's licensing requirements *to the extent that* those requirements hinder or obstruct the goals of federal law."  *Surrick v. Killion*, 449 F.3d 520, 530 (3d Cir. 2006) (emphasis supplied); *see also In re Desilets*, 291 F.3d 925, 930 (6th Cir. 2002) (holding, in unauthorized practice of law case, that "[w]hen state licensing laws purport to prohibit lawyers from doing that which federal law entitles them to do, the state law must give way.").

Principles of federal preemption *do not* prohibit state action, however, where such state action does not interfere with the requirements of federal law.  In *Kroll v. Finnerty*,

18

242 F.3d 1359 (Fed. Cir. 2001), for instance, the United States Court of Appeals held that an attorney practicing patent law in New York and also a member of the state bar was subject to state disciplinary authority, with no violation of federal preemption principles. The attorney in *Kroll* argued that the state bar's disciplinary authority was preempted by federal law authorizing the PTO to regulate the conduct of patent practitioners. *Id.* at 1363. The court found that there was no express preemption because the statutory text "gives no indication that [the federal statutes] are intended to preempt the authority of states to punish attorneys who violate ethical duties under state law." *Id.* at 1364. Quoting the first paragraph of the PTO's regulations governing the conduct of patent practitioners, the court observed:

> This part governs solely the practice of patent, trademark, and other law before the Patent and Trademark Office. Nothing in this part shall be construed to preempt the authority of each State to regulate the practice of law, except to the extent necessary for the Patent and Trademark Office to accomplish its Federal objectives.

*Id.* (quoting 37 C.F.R. § 10.1). The *Kroll* court continued:

> [T]here is indeed a limited field of law where the PTO's powers under 35 U.S.C. § 2(b)(2)(D) and 35 U.S.C. § 32 do preempt state law. Under these statutes, the PTO has the exclusive authority to establish qualifications for admitting persons to practice before it, and to suspend or exclude them from practicing before it. A state, for example, may not impose additional licensing requirements beyond those required by federal law to permit a non-lawyer patent agent to practice before the PTO. . . . In this case, *because the State of New York is not seeking to suspend or expel Kroll from practicing before the PTO*, the conduct of the Grievance Committee does not fall within the field of preemption outlined by *Sperry*.

19

242 F.3d at 1364-65 (emphasis supplied). With regard to the discipline to be imposed, federal law authorizes the PTO to "discipline patent practitioners for incompetence and a wide range of misconduct, much of which falls within the disciplinary authority of the states. That the PTO and the states may share jurisdiction over certain disciplinary matters, however, does not mean that the states' authority is preempted." *Id*. at 1365.

Similarly, in *Gadda v. Ashcroft*, 377 F.3d 934 (9th Cir. 2004), the Ninth Circuit Court of Appeals held that the State of California had authority to discipline a lawyer licensed in California whose practice consisted entirely of federal immigration cases. *Id*. at 946. The *Gadda* court reasoned that federal regulation of lawyers practicing in federal immigration matters does not preempt state regulation of attorneys. *Id.* While the *Kroll* and *Gadda* decisions differ from the present case to the extent that the attorneys under review in those cases were practicing under federal regulations *and* licensed in the host states, the holdings reached are relevant to the federal preemption issue and support the ODC and LDB position that where a state has properly asserted disciplinary jurisdiction over an attorney, federal regulations do not necessarily preempt state action.

The ODC and LDB contend that their exercise of jurisdiction in this case is not violative of the principles of *Sperry* or other federal law. They further maintain that their investigation of the alleged violations in this case would neither interfere with nor affect the federal investigation under the disciplinary rules and regulations of the PTO. The ODC and

20

LDB do not dispute the petitioner's right to represent patent clients before the PTO and explain in their brief that they do not seek "to suspend or expel Petitioner from practicing before the [PTO.]" The PTO Office of Enrollment and Discipline regulations specify that "nothing in this part shall be construed to preempt the authority of each State to regulate the practice of law. . . ." 37 C.F.R. § 10.1 (2012).[17] The PTO regulations also contemplate reciprocal discipline and require a practitioner to notify that office of any discipline imposed by another jurisdiction. 37 C.F.R. § 11.24 (2012). According to the regulations, a "final adjudication in another jurisdiction or Federal agency or program that a practitioner, whether or not admitted in that jurisdiction, has been guilty of misconduct shall establish a prima facie case by clear and convincing evidence that the practitioner violated [PTO disciplinary

---

[17]Pursuant to 28 U.S.C. § 530B (1998), federal government attorneys, without regard to where they may be licensed, are "subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." This enactment, applicable to attorneys actually representing the government such as assistant United States attorneys, resulted from discussions in the early 1990's "between state judicial authorities and the Department of Justice over a position taken by the DOJ in a written communication popularly referred to as the 'Thornburgh Memorandum.' In essence, that memorandum created serious problems by excusing federal attorneys from compliance with state ethics rules." *United States v. Talao*, 222 F.3d 1133, 1139 (9th Cir. 2000). That conflict was subsequently "dissipated when the Congress adopted what is now 28 U.S.C. § 530B, and made state ethics rules applicable to government attorneys." 222 F.3d at 1139-40. Prior to the enactment of 28 U.S.C. § 530B, however, the Supreme Court of Nevada held that the state had jurisdiction to discipline an assistant United States attorney who was not a member of the state bar, but who practiced law in federal court in Nevada. *Waters v. Barr*, 747 P.2d 900, 902 (Nev. 1987). The justification for the court's ruling was Nevada Supreme Court Rule 99.1, providing that every attorney practicing in Nevada, whether specially admitted or not, is subject to the disciplinary jurisdiction of the Nevada Supreme Court.

regulations]." 37 C.F.R. § 11.24(e) (2012).[18]  The ODC and LDB argue that because they will not seek to suspend or expel the petitioner from his federal practice, there is no conflict presently existing in the simultaneous federal and state disciplinary investigations.[19]  Based upon the foregoing, this Court agrees and finds that federal law does not preempt this state's disciplinary proceedings in this matter.

## IV.  Conclusion

For the reasons stated above, this Court denies the petitioner's request for a writ of mandamus to compel the ODC to cease further investigation and a writ of prohibition to prevent the LDB from prosecuting the alleged violations.

Writ denied.

---

[18]Some states have also imposed reciprocal state discipline from actions by the United States Patent and Trademark Office.  *See, e.g., In re Peirce*, 128 P.3d 443, 444 (Nev. 2006); *People v. Bode*, 119 P.3d 1098, 1100 (Colo. O.P.D.J. 2005).

[19]Pursuant to Rule 3.15 of the West Virginia Rules of Lawyer Disciplinary Procedure, various disciplinary sanctions are available, including probation, restitution, community service, admonishment, and reprimand.  Many of these options could be imposed in a manner which would not affect the petitioner's practice of patent law.